UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| RUTH N. REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-CV-310 |
| | ) |
| SELECT PORTFOLIO SERVICING, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss [doc. 8], Defendant's Brief in Support of the Motion [doc. 9], Plaintiff's Response in Opposition to the Motion [doc. 12], and Defendant's Reply [doc. 14]. For the reasons herein, the Court will grant in part and deny in part Defendant's motion.

**I. BACKGROUND**

Plaintiff Ruth N. Reed ("Ms. Reed") alleges that several years ago she secured a loan by executing a deed of trust, under which she used her property—specifically her home—as collateral. [Am. Compl., doc. 7, ¶ 5]. Ms. Reed claims that AmSouth Bank was the original lender under the deed of trust, [*id.*], but after Regions Bank eventually purchased AmSouth Bank's assets, she continued to repay her loan by sending her payments to Regions Bank instead of AmSouth Bank, [*id.* ¶¶ 5–6]. According to Ms. Reed, however, Regions Bank then "transferred the servicing rights to [her] loan" to Defendant Select Portfolio Servicing, Inc. ("Select Portfolio"), [*id.* ¶ 8], without notifying her of the

transfer, [*id.* ¶ 9]. She maintains that Select Portfolio never notified her of the transfer either. [*Id.*].[1] Although Ms. Reed alleges that Regions Bank did begin to return her payments, she claims that Select Portfolio did not credit these payments to her account, marked her account as delinquent, and referred her loan for foreclosure—all without informing her or communicating with her in any way. [*Id.* ¶¶ 10–12]. She asserts that a non-judicial foreclosure of her home then took place. [*Id.* ¶ 13]. As a result, she now brings this action against Select Portfolio, claiming a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e), (f) (Count I); a violation of 12 C.F.R. § 1024.41 (Count II); and wrongful foreclosure, based on which she requests rescission of her home's foreclosure (Count III). [*Id.* ¶¶ 18–31]. Select Portfolio now moves the Court to dismiss each of Ms. Reed's claims, arguing that Ms. Reed fails to plead sufficient facts to support them. [Mot. to Dismiss at 1].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In determining whether to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however, and

---

[1] Ms. Reed claims that she is deaf and mute [Am. Compl. ¶ 7], though Select Portfolio states that "it is not clear how this is relevant to" the parties' dispute, [Def.'s Br. at 2].

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

At the outset, Select Portfolio maintains that "[t]his action is an attempt to rescind a lawfully held foreclosure sale of the Plaintiff's former property." [Def.'s Br. at 1]. To back this contention, Select Portfolio notes that some allegations in the Amended Complaint blatantly contradict the Deed of Trust—a copy of which it filed into the record in support of its Motion to Dismiss. [*See* Deed of Trust, doc. 8-2, at 1]. For instance, Select Portfolio points out that although Ms. Reed alleges she executed the Deed of Trust on June 1, 2010, the document's actual date of execution is April 11, 2011. [Def.'s Br. at 1 n.1]. In addition, it notes that although Ms. Reed claims her loan totaled $145,520, the Deed of Trust shows that it really totaled $55,000. [*Id.*]. To explain these discrepancies, Select Portfolio infers that "Plaintiff's counsel likely utilized a form complaint to initiate this action." [*Id.* at 2 n.1]. Select Portfolio even invites the Court to visit the state's Public Notices' website so it can "take judicial notice that the allegations regarding the publication of foreclosure notice is [sic] absolutely false." [*Id.*].

3

On a motion to dismiss, the Court ordinarily must confine itself to a review of the allegations that are within a complaint's four corners, not looking beyond them. *In re Unumprovident Corp. Secs. Litig.*, 396 F. Supp. 2d 858, 873 (E.D. Tenn. 2005). The Court, however, can depart from this precept and deem a document to be part of a complaint if it is "attached to, incorporated by, or specifically referred to in the complaint." *Id.* (citations omitted). In this case, Ms. Reed has not attached the Deed of Trust, or any other document, to her Amended Complaint. Even so, "a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings" if "[it] is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (citation and quotation omitted).

Although Ms. Reed has not attached the Deed of Trust to her Amended Complaint, her allegations contain references to it, [*see* Am. Compl. ¶¶ 5–7], and the Deed of Trust— including the loan that is at the heart of it—is unquestionably integral to at least some of her claims, [*see id.* ¶ 21 (maintaining that Select Portfolio violated the FDCPA in part because it "never informed Plaintiff that it was the new servicer *on her loan*" (emphasis added))]. "In such event," that is, when a plaintiff's allegations contain references to an unattached document and that document is central to the plaintiff's claim, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss." *Greenberg*, 177 F.3d at 514 (quotation omitted). Select Portfolio has done exactly that, having filed a copy of what it claims to be the Deed of Trust at issue in this case. Ms. Reed has not disputed this document's authenticity, and the Court will therefore consider it to be part of the Amended Complaint's allegations. *See Parks v. Metro. Sec. Servs., Inc.*, No.

4

1:14-cv-412, 2014 WL 3784323, at *3 n.2 (E.D. Tenn. July 31, 2014) (considering an unattached document to be part of the amended complaint when the plaintiff referred to it in the amended complaint; the defendant filed it into the record; and the plaintiff did not challenge its authenticity).

When comparing the Deed of Trust to Ms. Reed's allegations, the Court observes inconsistencies between their respective contents that are indeed conspicuous, and they prompt the Court to wonder whether something is amiss with certain allegations.[2] Even so, the Court does not necessarily have license to respond to these inconsistencies with the measure that Select Portfolio believes is appropriate—dismissal. Rather, the Court must review the Amended Complaint for "*any* set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (emphasis added) (citation omitted); *see Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual

---

[2] The Amended Complaint not only contains inconsistencies but also inaccuracies. For instance, Ms. Reed alleges that the Court "has jurisdiction over the subject matter of this litigation pursuant to Tennessee Code Annotated § 16-11-101 and 102(a)," though, clearly, neither can be the source of the Court's *federal* jurisdiction. [Am. Compl. ¶ 3]. Despite Ms. Reed's erroneous assertion that the Court derives federal jurisdiction over this action from state statutes, the Court is not compelled to inquire into its authority to adjudicate the claims because it is confident that it has jurisdiction. *See Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 508–09 (6th Cir. 2006) (stating that courts may *sua sponte* inquire into their federal jurisdiction if they have doubts). Ms. Reed brings two claims—one under the FDCPA and another under 12 C.F.R. § 1024.41—that arise under federal law and clearly invoke federal question jurisdiction. *See* 28 U.S.C. § 1331. As to the third claim—the claim for wrongful foreclosure—the Court is satisfied, to the extent that it arises under state law, that it may exercise supplemental jurisdiction over this claim because it is so related to the federal claims that it forms part of the same case or controversy. *See* 28 U.S.C. § 1367(a); *see also Aldrich v. Univ. of Phoenix, Inc.*, 3:15-CV-00578-JHM, 2015 WL 5923594, at *5 (W.D. Ky. Oct. 9, 2015) (stating that "supplemental jurisdiction need not be specifically pled by a plaintiff in order for a district court to hear [the] state law claims." (citations omitted)).

allegations. District judges looking to dismiss claims on such grounds must look elsewhere for legal support." (footnote omitted)). In doing so, the Court is bound to the traditional mandate that it must accept all non-conclusory allegations in the Amended Complaint as true and construe them in a light most favorable to Ms. Reed. *See Mixon*, 193 F.3d at 400.

The Court, however, will issue a word of caution to Ms. Reed: she would do well to make sure—if she decides to move ahead with this case—that the factual basis underlying her claims has evidentiary support. Otherwise the specter of sanctions is likely to overshadow this litigation. *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief . . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"); *see also Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002) ("[W]e must reverse [the district court's dismissal of the plaintiff's claims], but we warn [the plaintiff] that if he persists in this litigation and his suit turns out to be frivolous, as we believe highly likely, he is courting sanctions." (citations omitted)).

### A. Violation of the FDCPA

The FDCPA's purpose is to protect consumers from debt-collection practices that are misleading and abusive. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 356 (6th Cir. 2012). To state a cause of action under the FDCPA, a plaintiff must allege (1) that the

6

money or property subject to collection qualifies as a "debt" under § 1692a(5),[3] (2) that the person carrying out collection qualifies a "debt collector" under § 1692a(6), and (3) that the debt collector violated a provision of the FDCPA. *Stamper v. Wilson & Assocs.*, No. 3:09-cv-270, 2010 WL 1408585, at *3 (E.D. Tenn. Mar. 31, 2010). Select Portfolio argues that Ms. Reed does not plead facts that satisfy the second element—in other words, facts that establish Select Portfolio as a debt collector. [Def.'s Br. at 4]. Select Portfolio also maintains that it is exempt from debt-collector status because, based on certain allegations in the Complaint, it comes within one of the FDCPA's statutory safe-harbor provisions, namely 15 U.S.C. § 1692a(6)(F)(iii). [*Id.* at 5].

   *1. Debt Collector under § 1692a(6)*

The term "debt collector" means "any person[4] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). Ms. Reed pleads that Select Portfolio satisfies this definition because it "is a debt collector as the term is defined in 15 USC [sic] § 1692(a)(6)." [Am. Compl. ¶ 20]. Select Portfolio argues that this allegation is conclusory and that Ms. Reed's claim warrants dismissal based on the Court's decision in *Stamper*. [Def.'s Br. at 4–5]. In *Stamper*, one of the issues before

---

[3] Subsection 1692a(5) defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

[4] The term "person" means "a natural person or an organization." 15 U.S.C. § 1602(e).

7

the Court was whether a law firm qualified as a debt collector under the FDCPA when it initiated non-judicial foreclosure under a deed of trust. 2010 WL 1408585 at *5. The Court ultimately dismissed the plaintiffs' claim because the complaint contained a bald assertion that the defendant qualified as a debt collector, without offering supporting allegations as to any collection-related activities that the defendant engaged in: "All plaintiffs have done is make conclusory statements that [the defendant is a] 'debt collector[].' This is not enough to survive [dismissal]." *Id.* at *8.

Unlike the plaintiffs in *Stamper*, Ms. Reed accompanies the allegation at issue in this case—the allegation that Select Portfolio "is a debt collector as the term is defined" under § 1692a(6)—with factual enhancement. Ms. Reed alleges that Select Portfolio meets the definition of a debt collector because it "received the servicing rights to [her] loan after the loan was in default," [Am. Compl. ¶ 20], and this allegation, which the Court accepts as true, opens Select Portfolio to liability as a debt collector, *see Bridge*, 681 F.3d at 362 (holding that the definition of a debt collector "includes any non-originating debt holder that . . . acquired a debt in default"). Also, Select Portfolio ignores Ms. Reed's allegation that it "threatened eviction" before launching proceedings for non-judicial foreclosure of her residence, [Am. Compl. ¶ 23]—an allegation that presents a factual illustration of the method of debt collection at issue, *see Bridge*, 681 F.3d at 358 (noting that Congress passed the FDCPA to prevent individuals from "being harassed, hounded, threatened and intimidated" (quotation omitted)); *see also* § 1692a(6) (defining a debt collector as any person who regularly attempts to collect a debt, whether through direct or indirect action**)**.

8

Case 1:16-cv-00310-RLJ-CHS   Document 15   Filed 02/16/17   Page 8 of 20   PageID #: 132

Select Portfolio, however, contends in its Reply that Ms. Reed's claim must nevertheless fail because she does not allege that it attempted to collect on her loan by using an "instrumentality of interstate commerce or the mails," an allegation that it states is "imperative" to a claim under the FDCPA. [Reply at 2 (quoting § 1692a(6))]. Viewing the allegations in a light most favorable to Ms. Reed, the Court is satisfied that as a whole they amount to a plausible assertion that the alleged threats of eviction occurred through interstate commerce, despite Select Portfolio's contention otherwise. Because Ms. Reed pleads that she is deaf and mute, [Am. Compl. ¶ 7], the Court can draw the reasonable inference that the threats of eviction she complains of must have been in writing—either by mail or e-mail, which involves interstate commerce, *see generally Cyberspace, Commc'ns, Inc. v. Engler*, 55 F. Supp. 2d 737, 744 (E.D. Mich. 1999) ("[T]he Internet is by nature an instrument of interstate commerce." (citations omitted)); *see also Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 803 (6th Cir. 2015) (holding that "a civil plaintiff need not allege that an e-mail crossed state lines to survive a motion to dismiss" when an interstate-commerce requirement is an element of a claim).

Finally, although the Court is aware that in *Stamper* it held that the defendant's initiation of non-judicial foreclosure under a deed of trust is not a debt-collection activity under the FDCPA because it involves the enforcement of a security interest, 2010 WL 1408585 at *3–10; *see Montgomery v. Huntington Bank*, 346 F.3d 693, 700–01 (6th Cir. 2003) (concluding "that except for [limited] purposes . . . an enforcer of a security interest . . . does not meet the statutory definition of a debt collector"), Select Portfolio does not cite *Stamper* for this proposition. Rather, Select Portfolio relies on *Stamper* to argue

9

that a plaintiff's skeletal assertion that a defendant is debt collector—without more—is incapable of supporting a claim under the FDCPA. Again, however, Ms. Reed does offer more than a conclusory assertion in alleging that Select Portfolio is a debt collector, and the Court is therefore unable to dismiss her claim based on Select Portfolio's argument under *Stamper*—or to delve into issues that, though possibly relevant, Select Portfolio has not itself raised under *Stamper*. *Cf. McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)).

### 2. *The Exemption under § 1692a(6)(F)(iii)*

Select Portfolio next contends that Ms. Reed's allegations "conclusively show" that it is exempt from debt-collector status and that Ms. Reed's claim under the FDCPA must therefore fail. [Def.'s Br. at 5]. Subsection 1692a(6) contains several safe-harbor provisions that exempt from debt-collector status persons engaged in certain activities. *See* § 1692a(6)(A)–(F). Under one of the exemptions, § 1692a(6)(F)(iii), a debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which *was not in default at the time it was obtained by such person*[.]" (emphasis added). In proposing that this exemption applies here, Select Portfolio underscores Ms. Reed's allegation in paragraph ten of the Amended Complaint, in which Ms. Reed claims that her "account was

10

marked as delinquent" after she failed to receive notice of her loan's transfer. [Def.'s Br. at 5 (quoting Am. Compl. ¶ 10)]. According to Select Portfolio, the only sensible interpretation of this allegation is that the loan must not have been in default when it became the servicer, and based on this interpretation, it claims that it satisfies the requirements for § 1692a(6)(F)(iii)'s exemption. [*Id.*].

To find merit in Select Portfolio's argument, however, the Court would have to disregard other allegations in the Amended Complaint like the allegation in paragraph twenty, in which Ms. Reed states "[Select Portfolio] received the servicing rights to th[e] loan *after* the loan was in default." [Am. Compl. ¶ 20 (emphasis added)]. In trying to steer the Court away from this allegation, Select Portfolio proposes that it is "not entitled to be treated as true" because it is conclusory—though it encourages the Court to accept as true the allegation in paragraph ten, which supports the exemption. [Def.'s Br. at 5]. Contrary to Select Portfolio's contention, Ms. Reed's allegation in paragraph twenty is not conclusory. Rather, it contains Ms. Reed's assertion that Select Portfolio performed a particular action—that it obtained servicing rights to the loan after it was in default—and is therefore entitled to the Court's deference. *See Riley v. Kurtz*, 893 F. Supp. 709, 721 (E.D. Mich. 1995) ("[The allegation] specifically states that defendant performed a particular action . . . . This is not conclusory.").

While Select Portfolio is correct that the allegations in paragraph ten and paragraph twenty do appear to contradict each other, the Court, again, cannot dismiss a claim simply because it comprises contrary allegations; instead, the Court must let a claim proceed so long as "any set of facts . . . could be proved consistent with the allegations." *Hishon*, 467

U.S. at 73. Because Ms. Reed alleges that Select Portfolio did not receive servicing rights to the loan until after it went into default, this allegation, when the Court accepts it as true, is consistent with Ms. Reed's assertion that Select Portfolio is a debt-collector, *see Bridge*, 681 F.3d at 362 (holding that a debt collector includes "any non-originating debt holder that . . . acquired a debt in default"), and bars Select Portfolio's reliance on the exemption under § 1692a(6)(F)(iii), *see* § 1692a(6)(F)(iii) (protecting only a person collecting a debt that "was not in default at the time it was obtained by such person"). Ms. Reed therefore pleads a plausible claim, at least as it relates to Select Portfolio's debt-collector status, and the Court must allow her to move forward with it.

### B. Violation of 12 C.F.R. § 1024.41

Section 1024.41 preserves a borrower's right, before a foreclosure sale, to submit and have a servicer review a "loss mitigation application," 12 C.F.R. § 1024.41(b), which is a request for an alternative to foreclosure that the servicer may make available to the borrower, *id.* § 1024.31. To invoke this right, a borrower must submit a complete loss mitigation application to the servicer more than thirty-seven days before a foreclosure sale is scheduled. *Id.* § 1024.41(c)(1). If a borrower meets this criterion, a servicer must notify the borrower within thirty days "of which loss mitigation options, if any, it will offer to the borrower." *Id.* § 1024.41(c)(1)(ii). A borrower may bring suit under 12 U.S.C. § 2605(f), the Real Estate Settlement Procedures Act ("RESPA"), if a servicer violates § 1024.41's loss mitigation provisions. *Id.* § 1024.41(a).[5] Select Portfolio moves the Court to dismiss

---

[5] The Court pauses to note that, in both Count II and Count III, Ms. Reed does not seek redress under the RESPA but under the Consumer Financial Protection Act of 2010 ("CFPA"), 12

the alleged violation of § 1024.41 because Ms. Reed "does not allege that she ever submitted an application." [Def.'s Br. at 7].

The Court disagrees. In paragraph seventeen, Ms. Reed alleges that she did make a request for loss mitigation and that Select Portfolio, without completing the necessary review, initiated proceedings for the foreclosure of her home: "[Select Portfolio] fail[ed] to properly review Ms. [Reed's] request for loss mitigation, [and Select Portfolio] proceeded with a non-judicial foreclosure sale of her home." Incidentally, Ms. Reed raises this same allegation in her claim for wrongful foreclosure: "[Select Portfolio] . . . refus[ed] to evaluate the borrower's request for loss mitigation relief." [Am. Compl. ¶ 29]. Because the Court is bound to accept as true Ms. Reed's allegations in paragraph seventeen, it must refrain from dismissing the claim.

### C. Wrongful Foreclosure

In Ms. Reed's third and final claim, Ms. Reed makes brief references to Tennessee law in her allegations, but the legal theory for her claim appears to rest on federal law

---

U.S.C. § 5481. [Am. Compl. 4–6]. Ms. Reed acknowledges in her Response, for the first time, that the redress she pursues in each of these counts is actually appropriate under the RESPA rather than under the CFPA. [Pl.'s Resp. at 4]. In this circuit, courts typically treat a legal theory that a plaintiff raises for the first time in a response "as an implicit motion to amend the complaint." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F. 3d 733, 740 (6th Cir. 1999). Ms. Reed, however, has amended the Complaint once already, and she may not amend it again without Select Portfolio's consent or the Court's permission. Fed. R. Civ. P. 15(a)(2).
  Select Portfolio does not argue that the Court should preclude Ms. Reed from advancing its newfound legal theory or that it is inappropriate in any way. In fact, Select Portfolio concedes that "Count Two is actually a claim under RESPA, not the CFPA," [Def.'s Br. at 6], and it concedes that Ms. Reed's claim in Count III is a claim under the RESPA, [*id.* at 7–8]. The Court will accept these concessions as Select Portfolio's consent to permit Ms. Reed to amend her claims. From this point forward, the Court will treat Count II and Count III as claims in which Ms. Reed seeks recourse under the RESPA.

13

because she alleges that Select Portfolio's failure to follow § 1024.41's loss mitigation provisions led to an unlawful foreclosure. [*Id.* ¶¶ 29–30]. Ms. Reed, in her Response, reiterates that she is basing her wrongful foreclosure claim on a violation of federal law, not a violation of Tennessee law: "The specific statutory scheme which [Select Portfolio] violated and which supports a claim for wrongful foreclosure is 12 C.F.R. § 1024.41." [Pl.'s Resp. at 5]. Select Portfolio shares the understanding that Ms. Reed's claim arises under federal law, stating that "the entire claim is premised on alleged violations of federal law." [Def.'s Br. at 8]. The Court will therefore treat Ms. Reed's claim as one that arises under federal law.

As the Court has recognized already, § 2605(f) of the RESPA permits a borrower to bring a civil action to redress a servicer's violation of § 1024.41. *See* § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))). Section 2605(f) states:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1) Individuals
> In the case of any action by an individual, an amount equal to the sum of—
> (A) any actual damages to the borrower as a result of the failure; and
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

While Select Portfolio does not challenge whether a party, in general, may seek redress under § 2605(f) after suffering a violation of § 1024.41, it does challenge whether § 2605(f) provides a cognizable cause of action for wrongful foreclosure—specifically whether the type of remedy that Ms. Reed pursues, the setting aside of the foreclosure, is available

14

under the statute. [Def.'s Br. at 8; Def.'s Reply at 4]. In response, Ms. Reed contends, with no support from legal authority, that the Court would render § 2605(f) "wholly ineffective" if it were to determine that it does not provide borrowers with the opportunity to pursue rescission of a wrongful foreclosure. [Pl.'s Resp. at 5–6]. Select Portfolio suggests, however, that Court can avoid resolving this issue now because the claim fails for other reasons. [Def.'s Br. at 8 n.5]. Specifically, Select Portfolio maintains that dismissal is proper because it is not the "foreclosing party" and therefore could not possibly be responsible for the alleged wrongful foreclosure. [*Id.* at 7]. In this vein, Select Portfolio identifies U.S. Bank Trust National Associates as the entity that carried out and is responsible for the foreclosure. [*Id.*].

### 1. *The Performance of the Foreclosure*

Select Portfolio, in arguing that the Court should dismiss Ms. Reed's claim because it is not the party that performed the foreclosure, it refers the Court to evidence in the record, namely the Substitute Trustee's Deed [doc. 8-3], a document that it filed with its motion. To consider this document, the Court would again require justification to look beyond the Amended Complaint's four corners, *see Greenberg*, 177 F.3d at 514, but this time the Court lacks this justification because the Substitute Trustee's Deed is not referenced in the Amended Complaint, [*see* Am. Compl. at 1–8]. Even if the Court could review this document, Select Portfolio's argument would still fail because it would require the Court to resolve a question of fact—to determine whether Select Portfolio or another party is responsible for the foreclosure—and the Court cannot resolve a question of fact at

15

the pleading stage. *See, e.g.*, *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). The Court must therefore decline to dismiss Ms. Reed's claim based on Select Portfolio's contention that a third party performed the foreclosure.

*2. Wrongful Foreclosure under § 2605(f)*

The courts that have addressed whether § 2605(f) permits a borrower to bring a claim to set aside a wrongful foreclosure have disallowed this type of claim because a borrower may obtain only actual damages and limited additional damages under § 2605(f), not injunctive or equitable relief. *See Garrow v. Wells Fargo Bank, N.A.*, No. 1:15-cv-1277, 2016 WL 1637441, at *3 (W.D. Mich. Apr. 26, 2016) ("[T]he principal relief Plaintiffs seek—to set aside the wrongful foreclosure and any sheriff sale and to vest title back in Plaintiffs—is not available under RESPA." (citation omitted)); *see also Stephens v. Capital One, N.A.*, No. 15-cv-9702, 2016 WL 4697986, at *3 (N.D. Ill. Sept. 7, 2016) ("Under § 6 of RESPA, 12 U.S.C. § 2605(f), a plaintiff's demand for relief is limited to . . . *actual damages* and the borrower's costs and attorney[']s fees."); *Garcia v. Mortg. Sense Inc.*, No. EDCV 13-1678-CAS (DTBx), 2013 WL 6190377, at *5 (C.D. Cal. Nov. 25, 2013) ("Plaintiff, thus fails to state a claim because she appears to rely on RESPA as the basis for a wrongful foreclosure action."); *Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 873, 887 (E.D. Cal. 2010) ("[B]ecause RESPA does not provide for injunctive relief, RESPA cannot serve as the basis for a wrongful foreclosure claim.").

16

The Court is inclined to agree with the opinions of these courts. Because Congress limited the remedial scheme under the RESPA to monetary damages, the Court is unable to broaden it so that it offers borrowers an equitable remedy to nullify foreclosures that they deem to be wrongful. *See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute[.]"); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 732 (1989) ("[W]hatever the limits of the judicial power to imply or create remedies, it has long been the law that such power should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute." (citation omitted)). To the extent that Ms. Reed relies on her claim to pursue abrogation of her home's foreclosure, the Court will therefore dismiss it.

The Court, however, will *not* dismiss this claim in its entirety because Ms. Reed requests other forms of relief in her claim that *are* available under § 2605(f). First, she requests damages for emotional distress, which she alleges to have endured because of her home's wrongful foreclosure and ascribes to Select Portfolio's "actions" in failing to review her loss mitigation application. [Am. Compl. ¶¶ 29–31]. *See Houston v. U.S. Bank Home Mortg. Wis. Serv.*, 505 F. App'x 543, 548 (6th Cir. 2012) (reversing in part the district court's grant of summary judgment because the district court did not consider the plaintiff's request for emotional damages under the RESPA). Second, she seeks "further relief to which [she] may be entitled." [Am. Compl. at 7]. *See Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424–25 (6th Cir. 2013) (concluding that the plaintiff's

17

request for "damages in an amount not yet ascertained, to be proven at trial" was sufficient to sustain a claim under the RESPA). Clearly, then, this is not the sort of claim that necessitates dismissal because "the plaintiff wants the improper relief sought in the complaint or nothing." *Black v. Columbus Pub. Schs.*, No. 2:96-CV-326, 2007 WL 2713873, at *9 (S.D. Ohio Sept. 17, 2007). At worst, Ms. Reed's claim suffers from inartful pleading, but the case law in this circuit "counsels against dismissal of RESPA claims on the basis of inartfully-pleaded actual damages." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 722 (6th Cir. 2013). To the extent that Ms. Reed pursues remedies other than rescission of her home's foreclosure, the Court will therefore allow her to continue with her claim. *See Bontkowski*, 305 F.3d at 762 (determining that even if the plaintiff sought relief to which he was not entitled under the law, this misstep did not warrant dismissal of the entire suit).

### 3. Duplicative Claims

The Court would be remiss if it did not address one final point that Select Portfolio briefly raises in its quest for dismissal: the allegations comprising Count III are practically indistinguishable from those comprising Count II. [*See* Def.'s Br. at 8 (informing the Court that "the allegations are duplicative")]. Indeed, in both counts, Ms. Reed pursues relief for the same alleged misconduct: Select Portfolio's failure to review her submission for loss mitigation under § 1024.41. [*Compare* Am. Compl. ¶¶ 25–26 *with id.* ¶¶ 29–30]. The only meaningful difference between these two counts is that Ms. Reed requests rescission of her home's foreclosure in Count III but does not request this relief in Count II. Because

18

rescission is not available as a remedy to Ms. Reed, however, the Court is now left with two counts that are near facsimiles of each other.

The Court cannot allow these claims to proceed in this state. *See BAC Home Loans Serv. LP v. Fall Oaks Farm LLC*, No. 2:11-cv-274, 2012 WL 3283397, at *3 (S.D. Ohio Aug. 10, 2012) ("[I]t is axiomatic that [the plaintiff] cannot assert two separate counts alleging the exact same claims.") (quotation omitted)); *cf. Foster v. City of Southfield*, Nos. 95-1032, 95-1072, & 95-1526, 1996 WL 742291, at *6 (6th Cir. Dec. 20, 1996) ("It was not error for the District Court to conclude that submitting both claims to the jury would be duplicative and potentially confusing to the jury."). In light of the overlap between the two counts, the Court will grant dismissal of Count III as a separate count but will allow its allegations, including all of Ms. Reed's requests for damages other than rescission of the foreclosure, to remain part of the Amended Complaint as an extension of Count II. *See Urban Assocs., Inc. v. Sunarrow Ltd.*, No. 04-CV-74835-DT, 2006 WL 539556, at *3 (E.D. Mich. Mar. 6, 2006) (dismissing two counts that mirrored the first count but electing to retain their allegations as "an extension or elaboration" of the first count).

## IV. CONCLUSION

Although Ms. Reed's Amended Complaint has its share of inconsistent allegations, it does contain allegations that support plausible claims under Count I and Count II, when the Court accepts the allegations as true and views them in the light that is most favorable to Ms. Reed. Under § 2605(f), however, Ms. Reed has no statutory right to rescission of her home's foreclosure, one of the remedies she requests in Count III. Also, the allegations in Count III are duplicative of the allegations in Count II and cannot constitute an

19

independent claim. Select Portfolio's Motion to Dismiss [doc. 8] is therefore **GRANTED in part and DENIED in part**. The Court orders as follows:

1. The Court **DENIES** dismissal of Ms. Reed's claims in Count I and Count II.

2. The Court **GRANTS** dismissal of Ms. Reed's claim in Count III to the extent she requests rescission of her home's foreclosure. The Court **DENIES** dismissal of this claim in all other respects. All surviving allegations in Count III, however, remain intact not as an independent claim but as an extension of Count II.

3. Select Portfolio **SHALL** serve a responsive pleading within fourteen days from the date of this Order.

    **IT IS SO ORDERED.**

    ENTER:

    s/ Leon Jordan
    United States District Judge